IN THE UNITED STATS DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WINIFRED RHODES | : | |
| Plaintiff | : | |
| v | : | Civil Action No. DKC-05-927 |
| STATE OF MARYLAND, *et al.* | : | |
| Defendants | : | |

o0o

**MEMORANDUM**

This civil rights action, filed on April 5, 2005, alleges that Plaintiff's visual impairment has not been properly accommodated by prison officials.[1] Pending is Plaintiff's Motion for Injunctive Relief and Defendants' Motion to Dismiss or in the Alternative for Summary Judgment. Papers No. 14 and 15. Plaintiff has filed a response in opposition to the motion, and requests appointment of counsel. Papers No. 20. Upon review of the papers filed, this court finds a hearing in this matter unnecessary. Local Rule 105.6 (D. Md. 2004). For the reasons set forth below, Plaintiff's motion for injunctive relief and request for appointment of counsel shall be denied and Defendant's motion, construed as a motion for summary judgment, shall be granted.

**Background**

Plaintiff alleges that on April 26, 2002, he was transferred from Roxbury Correctional Institution (RCI), an institution designated for visually impaired inmates, to the Maryland Correctional Institution at Jessup (MCIJ), which is not equipped to accommodate visually impaired inmates. Paper No. 1 at p. 3.

---

[1] The claim has been construed both as a civil rights action pursuant to 42 U.S.C. § 1983 alleging violation of the Eighth Amendment, and as an action under the Americans with Disabilities Act, under 42 U.S.C. § 12131 *et seq*.

Upon his transfer to MCIJ, Plaintiff claims he was assigned to a cell in H-building where inmates with special needs or disciplinary and administrative segregation assignments are housed. *Id*. at p. 4. On February 17, 2004, Plaintiff asserts he was assaulted by another inmate while he was in the recreation area. *Id*. He claims that no correctional officer witnessed the assault because there was no officer assigned to the area, which is not visible to control center personnel. *Id*. Two days after the assault, Plaintiff was placed on administrative segregation pending his March 29, 2004 transfer to Eastern Correctional Institution (ECI). *Id*. He claims that ECI is also an inappropriate institutional assignment in light of his disability. *Id*.

Defendants admit that Plaintiff is legally blind, but dispute that his assignments to MCIJ and ECI were inappropriate. Paper No. 15. They claim his transfer from RCI to MCIJ was required because Plaintiff was indebted to several inmates at RCI, one of whom had a history of assaultive behavior. *Id*. at p. 2 and Ex. 2. An investigation into Plaintiff's report that he had been threatened established that a plausible threat to his life existed and that a transfer out of RCI was required to insure his safety. *Id*. at Ex. 2, p. 3.

Defendants contend that, while he was incarcerated at MCIJ, Plaintiff was permitted the opportunity to choose his cell-mate . *Id*. at Ex. 7, p. 2. Plaintiff was provided with access to a social worker for purposes of addressing any special needs and he was offered escorts when he had to walk across the prison yard. *Id*. In addition, he was provided with a tape recorder as well as books on tape. *Id*. Upon Plaintiff's report that he was assaulted by another inmate at MCIJ, arrangements were made to transfer him to ECI for his safety. *Id*. at Ex. 5. Defendants admit that Plaintiff's assault was evident from

2

his physical condition, but aver that he did not cooperate in their investigation regarding who assaulted him or why. *Id*. at Ex. 4.

Currently, Plaintiff is assigned to a housing unit at ECI reserved for inmates with special needs. *Id*. at Ex. 9, p. 1. Defendants claim that precautions are taken to insure that only inmates who are unlikely to cause problems were assigned to that particular housing unit. *Id*. at pp. 1– 2. He has been provided with a lower bunk on the first floor of the housing unit and holds a job as a sanitation worker. *Id*. Since his transfer to ECI, Plaintiff has not voiced any complaints or noted any problems with accommodations for his disability. *Id*. at Ex. 6 and 10.

## Injunctive Relief

Plaintiff alleges in his Motion for Injunctive Relief that plans were being made to transfer him back to RCI. Paper No. 14 at p. 1. He claims entitlement to an injunction preventing the transfer because he was assaulted by a correctional officer when he was incarcerated there previously and his safety would be endangered should the transfer take place. *Id*. Defendants have addressed the allegation raised by Plaintiff in their motion for summary judgment. Paper No. 15 at p. 4, fn. 1. Counsel has proffered to the court that no plans exist for Plaintiff's transfer to RCI. *Id*. There is, thus, no need to consider injunctive relief. Accordingly, the Motion for Injunctive Relief shall be denied.

## Appointment of Counsel

A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1),[2] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances.

---

[2] Under § 1915(e)(1), a court of the United States may request an attorney to represent any person unable to afford counsel.

*See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Where a colorable claim exists but the litigant has no capacity to present it counsel should be appointed. *Id*. Upon careful consideration of the motions and previous filings by Plaintiff, this Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself, or secure meaningful assistance in doing so. Moreover, Plaintiff's claims are not unduly complicated. Therefore, this Court concludes that there are no exceptional circumstances which would warrant the appointment of an attorney to represent Plaintiff under §1915(e)(1).

## Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

4

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**Analysis**

In order to have a claim under the ADA, a plaintiff must show: that he is a person with a disability as defined by the statute; that he is otherwise qualified for the benefit he claims to have been denied; and that he was excluded from the benefit due to discrimination based on disability. *See Doe v. University of Md. Medical Systems Corporation*, 50 F.3d 1261, 1265 (4th Cir. 1995); *see also* 42 U.S.C. § 12131 *et seq.* Plaintiff's visual impairment is a disability. To the extent that he is asserting that his physical safety is a benefit to which he is otherwise qualified and has been denied,[3] the evidence presented by Defendants establishes otherwise. Upon receiving information that Plaintiff's safety was in jeopardy, Defendants twice arranged for his transfer. Paper No. 15 at Ex. 2. In addition, special arrangements were made to further insure his safety by allowing him input into the choice of his cell mate and assigning a social worker to address his needs as they arose. *Id*. at Ex. 5 and 7. In short, there has been no discrimination against Plaintiff as a disabled person, nor has there been a failure to provide him with a benefit to which he is otherwise entitled.

Plaintiff's allegations are more properly before the court as an Eighth Amendment claim. The gravamen of Plaintiff's claim is that the prisons to which he has been assigned have required him to suffer assaults at the hands of other inmates and to forego special accommodations for his disability. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

---

[3] *See Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998) ( Title II of the ADA applies to state prisons); *see also Tocasio v. Murray*, 57 F. 3d 1340, 1344 (4th Cir. 1995) (denial of requested accommodations for morbidly obese prisoner not a violation of clearly established right).

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

The conditions under which Plaintiff has been confined have not deprived Plaintiff of a basic human need. To the extent that his assignment to RCI was more accommodating to his disability, his transfer from that institution was clearly necessitated by the circumstances as revealed by the investigation into the numerous debts he owed other inmates.[4] Defendants were left with the unenviable choice between leaving Plaintiff at RCI where his safety might have remained at risk, or transferring him to another prison and attempting to provide appropriate accommodations there. Had Defendants chosen to leave Plaintiff at RCI, this case may instead have involved the question of their liability in terms of failing to protect Plaintiff from a known risk of harm.

---

[4] Four inmates were interviewed as part of the investigation. Paper No. 15 at Ex. 2, pp. 2– 3. Each of the inmates interviewed admitted that Plaintiff owed him money. *Id*. Two of the inmates interviewed stated that Plaintiff owed debts to several inmates and the general belief was that Plaintiff would be assaulted if he didn't pay the debts soon. *Id*. Inmate Jackson, admitted Plaintiff owed him money and denied any intent to cause him harm. *Id*. Jackson, however, had an institutional history of assaulting other inmates. *Id*. There is no way of knowing, however, whether the four inmates interviewed were the only people to whom Plaintiff was indebted, or whether their friends would retaliate against Plaintiff if they, rather than Plaintiff, were to be transferred. Based on the pervasiveness of the threat of harm, the conclusion, reached by prison officials was that Plaintiff could not be adequately protected at RCI. *Id*.

Plaintiff's claim with respect to the assault he suffered at MCIJ also must fail. In order to prevail Plaintiff must establish that the defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339–40 (4th Cir. 1997). Where, as here, a seemingly random assault occurs and prison officials are not forewarned of a potential threat, they are not liable. Additionally, the actions taken in the aftermath of the reported assault on Plaintiff in this case are the antithesis of deliberate or callous indifference to his safety.

Defendants are, accordingly, entitled to summary judgment in their favor. A separate Order follows.

___11/30/05_____   _____/s/_____
Date                                          DEBORAH K. CHASANOW
                                                    United States District Judge

8